1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELIAS WILLIAMS,

11              Petitioner,            No. 2:10-cv-2868 GEB JFM P

12        vs.

13   GARY SWARTHOUT, Warden,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of life in prison

18   with the possibility of parole following his 1996 conviction on charges of attempted first degree

19   murder, assault with a firearm with enhancement for gang activity, and permitting another person

20   to discharge a firearm from a vehicle with a gang enhancement.  Petitioner challenges a 2009

21   decision of the California Board of Parole Hearings (Board) to deny him a parole date for a

22   period of three years.  Petitioner claims that application of the provisions of Proposition 9, so-

23   called Marsy's Law, at the 2009 hearing to deny him parole for a period of three years violated

24   the Ex Post Facto Clause of the United States Constitution.  Petitioner also claims that the state

25   courts' decision to uphold the Board's denial of parole was based on an unreasonable application

26   of California's requirement that there be "some evidence" to support the denial of parole as well

1

1  as "an unreasonable determination of the facts in light of the evidence."  Memorandum of Points

2  and Authorities In Support of Petition for Writ of Habeas Corpus, filed October 25, 2010, at 5.

3  I.  Ex Post Facto Violation

4          Petitioner's first claim for relief is that the Board violated the Ex Post Facto

5  Clause by applying to him an increased time between parole hearings in accordance with the

6  provisions of Proposition 9, also known as Marsy's Law, enacted into law in California in

7  November 2008.  Petitioner was convicted and sentenced to life in prison with the possibility of

8  parole in 1996, twelve years prior to the passage of Proposition 9.

9          Prior to enactment of Proposition 9, under California law parole hearing were to

10  be conducted annually and the Board was authorized to defer subsequent hearings for "'[t]wo

11  years after any hearing at which parole is denied if the board finds that it is not reasonable to

12  expect that parole would be granted a hearing during the following year and states the bases for

13  the finding'" or up to five years for convicted murderers.  Gilman v. Schwarzenegger, 638 F.3d

14  1101, 1104 (quoting former California Penal Code § 3041.5(b)(2)).  "Proposition 9 significantly

15  changed the law governing deferral periods."  Gilman, id.

16          The most significant changes are as follows: the minimum deferral
           period is increased from one year to three years, the maximum
17           deferral period is increased from five years to fifteen years, and the
           default deferral period is changed from one year to fifteen years.
18           See id. Further, the burden to impose a deferral period other than
           the default period increased. Before Proposition 9 was enacted, the
19           deferral period was one year unless the Board found it was
           unreasonable to expect the prisoner would become suitable for
20           parole within one year. Cal.Penal Code § 3041.5(b)(2) (2008).
           After Proposition 9, the deferral period is fifteen years unless the
21           Board finds by clear and convincing evidence that the prisoner will
           be suitable for parole in ten years, in which case the deferral period
22           is ten years. Cal.Penal Code § 3041.5(b)(3)(A)-(B) (2010). If the
           Board finds by clear and convincing evidence that the prisoner
23           will be suitable for parole in seven years, the Board has discretion to set
           a three-, five-, or seven-year deferral period. Id. §
24           3041.5(b)(3)(B)-(C).

25  Id. at 1104-05.  At the 2009 hearing, the Board set a three year deferral period for petitioner, the

26  new minimum deferral period under California law and two years longer than the minimum

deferral period under the earlier provisions of California law.  For the reasons set forth infra, this claim must be dismissed because petitioner is a member of the class in Gilman v. Fisher, 05-0830 LKK GGH P (Gilman), an action which includes the issue presented by petitioner's ex post facto clause claim.  In findings and recommendations filed October 5, 2012, a magistrate judge in this court set forth standards relevant to this analysis:

> Prior to the enactment of Marsy's Law, the Board deferred subsequent parole suitability hearings with respect to indeterminately-sentenced inmates for one year unless the Board determined it was unreasonable to expect that parole could be granted the following year. If that determination was made, the Board could then defer the inmate's subsequent parole suitability hearing for up to five years. See Cal. Pen.Code § 3041.5(b) (2) (2008). Marsy's Law, . . ., amended § 3041.5(b)(2) to impose a minimum deferral period for subsequent parole suitability hearings of three years, and to authorize the Board's deferral of a subsequent parole hearing for up to seven, ten, or fifteen years. Id. § 3041.5(b)(3) (2010).
>
> One of the claims presented by the plaintiffs in the class action Gilman case is that the amendments to § 3041.5(b)(2) regarding parole deferral periods imposed under Marsy's Law violates the Ex Post Facto Clause because "when applied retroactively, [they] create a significant risk of increasing the measure of punishment attached to the original crime." ( Gilman, Doc. No. 154–1 at 13 (Fourth Amended/Supplemental Complaint), Doc. No. 183 (Mar. 4, 2009 Order granting plaintiffs' motion for leave to file a Fourth Amended/Supplemental Complaint.)) With respect to this Ex Post Facto claim, the class in Gilman is comprised of "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 4, 2008." (Gilman, Doc. No. 340 (Apr. 25, 2011 Order amending definition of class.)) The Gilman plaintiffs seek declaratory and injunctive relief, including a permanent injunction enjoining the Board from enforcing the amendments to § 3041.5(b) enacted by Marsy's Law and requiring that the Board conduct a new parole consideration hearing for each member of the class. (Gilman, Doc. No. 154–1 (Fourth Amended/Supplemental Complaint) at 14.)
>
> In a class action for injunctive relief certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure a court may, but is not required to, permit members to opt-out of the suit. Crawford v. Honig, 37 F.3d 485, 487 n. 2 (9th Cir.1994). In certifying the Gilman class, the district court found that the plaintiffs satisfied the requirement of Rules 23(a) and 23(b)(2) that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

25

1     declaratory relief is appropriate respecting the class as a whole."

2     (See Gilman, Doc. No. 182 (Mar. 4, 2009 Order certifying class pursuant to Fed.R.Civ.P. 23(b)(2), Doc. No. 257 (June 3, 2010

3     Ninth Circuit Court of Appeals Memorandum affirming district court's order certifying class.))  According to the district court in

4     Gilman, the members of the class "may not maintain a separate, individual suit for equitable relief involving the same subject

5     matter of the class action." (Gilman, Doc. No. 296 (Dec.10, 2010 Order) at 2; see also Doc. No. 278 (Oct. 1, 2010 Order), Doc. No.

6     276 (Sept. 28, 2010 Order), Doc. No. 274 (Sept. 23, 2010 Order.))

7 Whitmore v. Salinas, 2012 WL 4764429 (E.D.Cal. 2012).

8         Here, petitioner alleges that he is a California state prisoner sentenced to life in

9 prison for an offense that occurred before November 4, 2008. (Pet. at 1.)  Petitioner is therefore a

10 member of the Gilman class.  As with the plaintiffs in Gilman, petitioner alleges that Marsy's

11 Law violates the Ex Post Facto Clause because when applied retroactively it creates a risk of

12 increasing the length of his punishment.  Petitioner seeks a writ of habeas corpus. However, even

13 if the court found that the Board's 2009 three-year deferral of petitioner's next parole suitability

14 hearing violated the Ex Post Facto Clause, petitioner would not be entitled to release on parole

15 because the claim concerns only the timing of petitioner's next parole suitability hearing.  Rather,

16 any equitable relief would be limited to an order directing the Board to conduct a new parole

17 suitability hearing and enjoining the Board from enforcing against petitioner any provisions of

18 Marsy's Law found to be unconstitutional. This is the same relief petitioner sought by the Gilman

19 class. ( See Gilman, Doc. No. 154–1 (Fourth Amended/Supplemental Complaint) at 14.)  It

20 therefore appears that petitioner's rights are fully protected by his membership in the Gilman

21 class.  Accordingly, the court recommends that petitioner's Ex Post Facto claim be dismissed

22 without prejudice to any relief that may be available to him as a member of the Gilman class. See

23 Crawford v. Bell, 599 F.2d 890, 892 (9th Cir.1979) ("A court may choose not to exercise its

24 jurisdiction when another court having jurisdiction over the same matter has entertained it and

25 can achieve the same result.").

26 /////

1   II.  Due Process

2        In his second claim for relief, petitioner contends that the 2009 denial of parole

3   violated his federal constitutional right to due process of law because it was not supported by

4   sufficient evidence.[1]   The Due Process Clause of the Fourteenth Amendment prohibits state

5   action that deprives a person of life, liberty, or property without due process of law.  A litigant

6   alleging a due process violation must first demonstrate that he was deprived of a liberty or

7   property interest protected by the Due Process Clause and then show that the procedures

8   attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of

9   Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

10       A protected liberty interest may arise from either the Due Process Clause of the

11  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

12  expectation or interest created by state laws or policies." Wilkinson v. Austin,  545 U.S. 209,

13  221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

14  The United States Constitution does not, of its own force, create a protected liberty interest in a

15  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981);

16  Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or

17  inherent right of a convicted person to be conditionally released before the expiration of a valid

18  sentence.").  However, "a state's statutory scheme, if it uses mandatory language, 'creates a

19  presumption that parole release will be granted' when or unless certain designated findings are

20  made, and thereby gives rise to a constitutional liberty interest." Greenholtz, 442 U.S. at 12.  See

21  also Allen, 482 U.S. at 376-78.

22       California's parole statutes give rise to a liberty interest in parole protected by the

23  federal due process clause.  Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011).  In California, a

24

25       [1]  As noted above, petitioner describes this claim as a claim that the state court decision
    upholding the denial of parole was an unreasonable application of California's "some evidence"
    standard and based on an unreasonable determination of the facts.  The court construes this claim
26  as one for violation of his federal constitutional right to due process.

1    prisoner is entitled to release on parole unless there is "some evidence" of his or her current

2    dangerousness.  In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29

3    Cal.4th 616, 651-53 (2002).  However, in Swarthout the United States Supreme Court held that

4    "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive

5    federal requirement." Swarthout, 131 S. Ct. at 862.   Rather, the protection afforded by the

6    federal due process clause to California parole decisions consists solely of  the "minimal"

7    procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . .

8    a statement of the reasons why parole was denied."  Id.

9            Here, it is plain from the record that petitioner was present at the 2009 parole

10   hearing, that he participated in the hearing, and that he was provided with the reasons for the

11   Board's decision to deny parole.  See Ex. I to Petition for Writ of Habeas Corpus, filed October

12   25, 2010.  Petitioner's second claim must therefore be denied.

13           Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United

14   States District Courts, "[t]he district court must issue or a deny a certificate of appealability when

15   it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of

16   appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

17   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either

18   issue a certificate of appealability indicating which issues satisfy the required showing or must

19   state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b).  As noted above,

20   petitioner's Ex Post Facto Clause claim should be dismissed without prejudice.  Moreover, for

21   the reasons set forth in these findings and recommendations petitioner has not made a substantial

22   showing that his constitutional right to due process was violated by the 2009 decision to deny

23   him parole.  Accordingly, no certificate of appealability should issue.

24           In accordance with the above, IT IS HEREBY RECOMMENDED that:

25           1.  Petitioner's claim that his rights under the Ex Post Facto Clause were violated

26   by the 2009 decision to defer further parole consideration for a period of three years be dismissed

6

1   without prejudice to any relief that may be available to petitioner as a member of the class in

2   Gilman v. Fisher, 05-0830 LKK GGH P;

3           2.  Petitioner's second claim for relief be denied; and

4           3.  The district court decline to issue a certificate of appealability.

5           These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10  objections shall be filed and served within fourteen days after service of the objections.  The

11  parties are advised that failure to file objections within the specified time may waive the right to

12  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: November 9, 2012.

14

15                             UNITED STATES MAGISTRATE JUDGE

16

17  12

18  will2868.157

19

20

21

22

23

24

25

26